### DAVIS v. UNITED STATES.
#### No. J–629.

Court of Claims.
Jan. 12, 1931.

F. W. McReynolds, of Washington, D. C., for plaintiff.

Lisle A. Smith, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Frank J. Ready, Jr., of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, WHALEY, WILLIAMS, and LITTLETON, Judges.

GREEN, Judge.

Plaintiff brings this suit to recover what he alleges to be an overpayment of income taxes for the calendar year 1920, which were assessed on account of a profit alleged to have been realized in that year through a sale of real estate. The controversy is mainly as to the ultimate facts, and, when these are found, there is no dispute as to the statutory provisions which are applicable in determining the tax. The case is governed by the Revenue Act of 1926 (44 Stat. 9), which, by its terms, was made retroactive, and under the provisions of this act the Bureau of Internal Revenue made the following regulation:

"Art. 44. *Sale of Real Property Involving Deferred Payments.*—Under section 212 (d) deferred-payment sales of real property fall into two classes when considered with respect to the terms of sale, as follows:

"(1) Sales of property on the installment plan, that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made do not exceed one-fourth of the purchase price."

The principal question in the case is whether a transaction involving the disputed tax was a sale of real property on the "installment plan" described in subdivision 1 of this regulation, and subject to the determination of this question another question is also involved, namely, as to whether any cash was received on the sale which was taxed.

The issue so presented is primarily one of fact, and its determination rests on still another question, which is whether one or two sales were consummated by the transactions hereinafter set out.

In the early part of 1919 the plaintiff entered into a written contract with one Martin for the sale to the latter of a section of land (640 acres). Under the terms of this contract, Martin was to make payment for the land partly in cash and partly by a purchase-money mortgage thereon. The contract is set out in full in finding 1 of the special findings of fact. It showed that a small payment had been made in cash, and further provided for the deposit of the deed and contract in escrow, for payment of an additional amount in cash, and the execution of a purchase-money mortgage to secure the balance of the purchase price by Martin not later than three days after March 1, 1920, and delivery of the deed to Martin on compliance with the contract on his part.

In the latter part of 1919, although Martin had as yet received no deed to the premises, he entered into a contract in writing with one Schuetz to sell him; on certain terms and conditions, one-half the land (320 acres) for which he held a contract from plaintiff. This instrument has been lost, but in a general way it appears that a small payment was made in cash, and the balance was to be settled on delivery of the deed therefor by payment of more cash and assuming a purchase-money mortgage on the premises. Subsequently, but before March 1, 1920, Martin admitted, and it was apparent to all parties interested in the land, that he would not be able to meet the cash payment that was required to be made by the original contract when that date arrived. This caused all three of the parties named, together with one or more of the land agents concerned in the transaction, to meet to consider the situation. This meeting was held about March 1, 1920, and as a result thereof it was finally agreed between plaintiff, Martin, and Schuetz that plaintiff should receive back the deed that he had deposited in escrow for the section, and should convey to Schuetz the half section which Martin had agreed to sell to Schuetz, the conveyance to be made on certain terms and conditions hereinafter set forth, and also that the plaintiff should convey the other half section to Martin on certain terms and conditions not necessary to be considered, if there were, in fact, two separate sales. As a part of the arrangement it was agreed that plaintiff should retain the cash payment which had been made to him, and that the price of the land purchased by Schuetz should be reduced to $110,000. The $4,000 which Schuetz had paid was returned to him through Schuetz giving Martin a check for $6,000 and Martin giving a check to Schuetz for $10,000, which covered the cash payment of $4,000 which Schuetz had given to Martin and the $6,000 check referred to. The price of the land purchased by Schuetz, reduced as above stated, was to be paid by him to plaintiff, and all matters arising out of the prior transactions between the plaintiff and Martin, and Martin and Schuetz, with reference to the land, were understood to be settled and were disposed of by the new agreements made.

Considering now more particularly that portion of the agreement between plaintiff and Schuetz, the evidence shows that plaintiff conveyed to Schuetz the half section bought by him for a consideration of $110,000. Schuetz settled for this amount in part by giving the plaintiff a purchase-money mortgage on the property conveyed to him, securing his two promissory notes to plaintiff, one for $12,800 due March 1, 1925, and one for $51,200 due March 1, 1930. Schuetz settled the remainder of the purchase price by executing to plaintiff two mortgages on other real estate owned by him, each of said mortgages securing two promissory notes payable at future dates. The total amount of the four notes so secured by these two mortgages was $46,000.

When plaintiff made his original return for the year 1920, he treated all of these transactions as though they were one sale of the whole section of land, and paid the tax accordingly. Subsequently, he filed an application for refund, alleging, in substance, that the final sale and conveyance to Schuetz and Martin superseded the original contract, and constituted, in fact, two separate and independent transactions; that, as he received

no cash from Schuetz, the transaction with the latter should be treated as an installment sale; and that he made no income or profit in relation thereto in the year 1920. The Commissioner having denied this claim for refund, the plaintiff now seeks to recover in this action the amount of income tax assessed and paid by him on account of the transaction with Schuetz.

In discussing the contentions of the respective parties, it should be kept in mind that the tax in controversy was assessed for the calendar year 1920, and must be computed on the profits actually received that year. The plaintiff contends that the original contract of purchase of the land by Martin in 1919, and the final settlement and adjustment made between the plaintiff, Martin, and Schuetz about March 1, 1920, under which the deeds were executed by plaintiff by which the land was transferred in separate tracts to Martin and Schuetz, respectively, are two entirely separate transactions, although the one carried on about March 1, 1920, was connected with the original contract made between the plaintiff and Martin. It is contended on behalf of the defendant that there was in fact but one sale, or at least that the tax should be assessed on the basis of the contract for sale made by the plaintiff to Martin, and the Commissioner, while at first recognizing the claim of plaintiff, finally so held. This action, we think, was an error.

■ It is not necessary for us to determine whether the original contract merely granted an option or was one as to which specific performance could be compelled. Nor do we think it is material that Schuetz, in settling for the land which he bought, not only executed a purchase-money mortgage, but gave two other mortgages to secure notes aggregating $46,000. The important fact is that the original contract was entirely superseded, and the deed which had been executed thereunder and deposited in escrow returned to the plaintiff. The only profits taxable to plaintiff for the year 1920 were those which resulted from the settlement which occurred about March 1 of that year as carried out by the parties at the time, and in this connection it might be said also that, whether the original contract was enforceable up to the date of this new agreement or not, it is certain that it was not enforceable after the parties had entered into and consummated the new agreement. Shuetz paid no cash under his agreement with plaintiff made in the settlement, which was entirely different and separate from his agreement with Martin, which

was no longer enforceable. He gave the plaintiff for the land which was conveyed to him nothing but notes payable in a future year secured by mortgages. It is urged on behalf of defendant that two of these mortgages were upon land which Schuetz owned and which was not conveyed to him by plaintiff, but all that plaintiff received from him for the land was evidences of indebtedness, and it is entirely immaterial how this indebtedness was secured. We find that there were two sales made by plaintiff, one to Schuetz and one to Martin, and that the sale to Martin was not made under the original contract; that, as no cash was received on the sale to Schuetz, no profits were realized, and none were taxable on that particular transaction, and that plaintiff's tax must be computed without this transaction being included therein.

■ It is contended on behalf of defendant that plaintiff in making his original return treated all these transactions with reference to land as one sale, but one of the objects of the statute providing for filing claims for refund is, as we think, to enable the taxpayer to correct errors of fact. The statement was prejudicial to the plaintiff rather than the defendant, and clearly was not willfully or fraudulently made. It also appears that, in making the application for the refund, the plaintiff stated that $10,000 was paid in cash on the sale to Schuetz. This is another error of fact which was not prejudicial to the defendant. Shortly after the filing of the claim for refund, the plaintiff also filed a protest against the revenue agent's action in rejecting the claim for refund, in which the facts were set out in more detail with reference to the claim than in the application for refund, and the protest showed that no cash was paid on the sale to Schuetz. We think this can be treated as an amendment to the claim, if any amendment was necessary, and that plaintiff therefore is entitled to recover the full amount of the additional tax assessed against him on account of the sale to Schuetz, with interest from date of payment. Plaintiff's claim for refund was for $10,812.24, or such greater amount as is legally refundable.

Computing plaintiff's income without allowing any profit on the sale to Schuetz, we find that his correct tax was $235.99. He paid a total, including interest, of $11,643.55, and is entitled to recover the difference between the amount paid and the amount actually due, together with interest from the several dates on which it was paid. Judgment will be rendered accordingly.